NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHELBIE N., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.N., *Appellees*.

No. 1 CA-JV 21-0223
FILED 12-14-2021

Appeal from the Superior Court in Maricopa County
No. JD28468
The Honorable Lori Bustamante, Judge

**AFFIRMED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Presiding Judge Randall M. Howe delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Michael J. Brown joined.

H O W E, Judge:

¶1            Shelbie N. ("Mother") appeals the juvenile court's order terminating her parental rights to A.N. For the following reasons, we affirm.[1]

### FACTS AND PROCEDURAL HISTORY

¶2            We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Mother gave birth to A.N. in May 2013. In May 2014, the Department received reports that Mother was using methamphetamine and heroin and neglecting A.N. The Department removed A.N., placing him with his maternal grandmother, and petitioned for dependency. The juvenile court adjudicated A.N. dependent in August 2014. The Department provided Mother with reunification services, including behavioral-health treatment, substance-abuse testing, inpatient and outpatient substance-abuse treatment, and parent-aide services. Mother maintained temporary sobriety and in March 2016 the Department returned A.N. to her, dismissing the dependency a few months later.

¶3            The Department, however, continued to receive reports that Mother abused substances and neglected A.N. in 2016 and 2017, and in September 2019 it received a report that she had been found "shooting up heroin" in her bedroom. The report alleged that maternal grandmother knew of Mother's drug use and nonetheless permitted her to supervise A.N. and drive with him in the car after her use, with A.N. describing a particular parking lot "where my mommy pulls over to throw up." The Department implemented an in-home plan whereby the maternal grandmother, cousin, and aunt acted as safety monitors to supervise Mother when she was with A.N. While she initially denied drug use, she tested positive for methamphetamine in October 2019 and admitted to using it daily. She also tested positive for opiates, including morphine,

_____

[1]            A.N.'s father is not a party to this appeal.

oxycodone, and heroin in December 2019 and January 2020, and admitted that she continued to use heroin and opiates that were not prescribed to her. None of the safety monitors had been able to recognize that she was again abusing substances. As a result, the Department removed A.N. from the home, placed him with maternal grandfather and his wife, and petitioned for dependency in January 2020. The juvenile court adjudicated A.N. dependent, and the Department again provided Mother with reunification services, including substance-abuse treatment and testing, parent-aide services, and supervised visitation.

¶4            Mother initially completed her substance-abuse intake with TERROS, which referred her to standard outpatient treatment. She "minimal[ly]" participated in standard outpatient treatment and after positive substance-abuse tests, was referred to intensive outpatient treatment, where she was deemed "resistant" to treatment. TERROS closed her services due to her lack of participation in February and that same month she again tested positive for opiates, heroin, and methamphetamine.

¶5            In March 2020, Mother spent 30 days in inpatient substance-abuse treatment and was referred to substance-abuse treatment with Continuum Recovery Center upon leaving. In April 2020, the Center caught her "cheating" on a substance-abuse test and discharged her from the program. That same month, she crashed her car into a median barrier. The responding officer noted that she had slurred speech and "a fresh 'track mark.'" She tested positive for methamphetamine and morphine and was charged with driving under the influence ("DUI").

¶6            In June 2020, the Department again referred Mother to TERROS for substance-abuse treatment. Although she participated in outpatient treatment that month, she tested positive for opiates, including heroin and morphine, multiple times. She again tested positive for heroin once in July and three times in August.

¶7            Meanwhile, Mother participated in two parent-aide services referrals. The first referral closed out unsuccessfully after she attended only five of 18 skill sessions. The second referral closed after she attended only 12 out of 21 skill sessions and 19 out of 27 visitations, enhancing only one out of 12 identified diminished protective capacities essential to parenting.

¶8            In October 2020, the Department moved to terminate Mother's parental rights to A.N. on the substance-abuse ground under A.R.S. § 8–533(B)(3). Despite the pending termination, she did not successfully complete a single substance-abuse test between October 2020

and April 2021 and only "partially" complied with substance-abuse treatment. In April, she went to a testing site but refused to provide a hair-follicle sample for testing. In May, she submitted a hair-follicle sample that returned presumptive positive for amphetamine and methamphetamine at "21 times the cutoff level."

¶9            At the termination hearing in May 2020, the Department notified the juvenile court and Mother that at the end of the hearing it would move to amend its termination petition to add the 15 months in out-of-home placement grounds under A.R.S. § 8–533(B)(8)(c). Mother did not object at that time. She then testified that she did not participate in the substance-abuse tests because she tested positive for Covid-19 in January 2021 and suffered symptoms for about two months. She admitted, however, that she used drugs that same month, which she claimed was the last time she used a drug. In February, she injured herself when she fell and required surgery, using a walker afterwards. She claimed that these injuries and her illness prevented her from participating in the substance-abuse testing. She also claimed that her previous use of Ritalin may have contributed to her positive test for methamphetamine and submitted her prescription to the court. She then testified that she and A.N. were extremely close and had the "best relationship a mother and a son could ask for." She claimed that if her rights were terminated, A.N.'s maternal grandfather, her father, would not allow A.N. to communicate with her or other family members. Maternal grandmother testified that while "it is early" in Mother's recovery, she has "turned a corner."

¶10           The Department's case manager testified that Mother's Covid diagnosis precluded her participation in services for only 14 days. The case manager also testified that she had asked Mother if she needed transportation to her testing, and she had said no, asserting that "she was able to be mobile with a walker." The case manager asked Mother to take a hair-follicle test at the end of March 2021, that she refused, claiming the test would be "dirty" because she had been sober only for a month and a half, or since mid-February.

¶11           The case manager further testified that A.N. was very bonded to maternal grandfather and his wife and that they met his needs, provided a safe and stable home, and intended to adopt him. She also testified that maternal grandfather had attempted to allow Mother to speak to A.N. on various occasions, including his birthday, but that A.N. had refused. At the close of the Department's presentation of evidence, it moved to amend the pleadings to include the 15 months' time-in-care as an additional ground for termination. Mother objected, claiming that the evidence did not reflect

that the Department had made diligent reunification efforts. The juvenile court granted the Department's request to amend the termination motion to include the 15 months' time-in-care ground.

¶12        The juvenile court terminated Mother's parental rights on both the substance-abuse and 15 months in out-of-home placement grounds. It found that Mother's failure to refrain from substance abuse, her multiple positive substance-abuse tests, her DUI in April 2020, her failure to complete substance-abuse testing between October 2020 and April 2021, and her positive test for methamphetamine in May 2021—which was "over 20 times the cut off level"— supported termination. It further found that she had never "fully participat[ed] in testing or treatment" and that she had "sufficient time to engage in services before and after her [Covid] diagnoses" and "hip surgery" because the case had been pending for over a year and a half. The court also found that while some records indicated that A.N. and Mother shared a positive bond, the totality of circumstances showed that termination was in A.N.'s best interests because A.N. had a positive bond with his maternal grandfather and that his maternal grandfather was meeting his needs and was willing to adopt him. It further found that denying termination would subject A.N. to an "uncertain future with a Mother who is unable to safely parent" because of her drug addiction. Mother timely appeals.

## DISCUSSION

¶13        Mother argues that the juvenile court erred in terminating her rights to A.N. and finding that termination was in A.N.'s best interests. A juvenile court's termination determination is reviewed for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004). To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8–533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); Ariz. R.P. Juv. Ct. 66(C); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). Because the juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts, *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004), we will affirm a termination decision unless no reasonable evidence supports it, *Xavier R. v. Joseph R.*, 230 Ariz. 96, 100 ¶ 11 (App. 2012).

¶14        To terminate parental rights for 15 months in an out-of-home placement, the juvenile court must find clear and convincing evidence that (1) the Department made diligent efforts to provide appropriate

reunification services; (2) the child has been in an out-of-home placement for a cumulative total period of 15 months or longer under court order; (3) the parent has been unable to remedy the circumstances that caused the child to be in an out-of-home placement; and (4) a substantial likelihood exists that the parent will be incapable of exercising proper and effective parental care and control in the near future. A.R.S. § 8–533(B)(8)(c).

¶15        Reasonable evidence supports the juvenile court's termination of Mother's parental rights. A.N. has been in out-of-home placement for more than 15 months. The Department provided mother with substance-abuse treatment, substance-abuse testing, and parent-aide services, among other services, to help her reunify with her son.

¶16        However, Mother has been unable to remedy her substance abuse and a substantial likelihood exists that she will be incapable of exercising proper and effective parental care in the near future. Despite already having gone through a dependency proceeding and reunification services, she merely participated in the treatment partially, even cheating on a substance-abuse test, and was deemed resistant to treatment. Although she began to superficially participate in treatment and substance-abuse testing later in the dependency, she continued to test positive for heroin and methamphetamine through October 2020, at which point she stopped testing altogether. While she claims that she missed the tests after her Covid diagnosis in January 2021 and surgery in February 2021, the Department offered transportation, which she refused. She also refused substance-abuse testing after the Department moved to terminate her parental rights because she knew that the test would be "dirty." When she did finally submit to a substance-abuse test in May 2021, she tested positive for methamphetamine at a level 20 times the maximum amount.

¶17        Mother also failed to adequately engage in parent-aide services. Despite two referrals throughout the dependency, she missed many skills sessions and visitations and failed to improve most of her parenting skills. Her failure to participate fully in parent-aide services and her inability to improve her skills coupled with her continued substance-abuse provided proof of her inability to exercise proper parental care and control in the near future. Evidence therefore supports the juvenile court's order terminating Mother's parental rights to A.N.

¶18        Mother nonetheless argues that the Department failed to show by clear and convincing evidence that she was unable to remedy her substance abuse and that she would not be "capable of exercising proper and effective parental care and control in the near future." She claims that

her previous Ritalin prescription and use may have caused a false positive test in 2021 and that she had been sober since January 2021. She also claims that since maternal grandmother testified that she had turned a corner, the Department failed to establish that she had been unable to remedy her substance abuse and not be capable of properly parenting in the near future. Contrary to her contentions, however, reasonable evidence supports a conclusion that she tested positive for methamphetamine in May 2021 and that by her own admission she last used in February 2021. Furthermore, maternal grandmother had historically failed to recognize Mother's substance abuse and had, at times, hidden it from the Department. Even so, maternal grandmother conceded that any progress Mother had made had been very recent and her testimony recognized that it was "early" in the road to recovery. The court had discretion to give whatever weight it desired to maternal grandmother's testimony. Mother's arguments, thus, merely ask this court to reweigh evidence, which we will not do. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App. 2002).

**¶19** Mother also argues that while A.N. was in out-of-home placement for more than 15 months, the Department failed to offer services to her while she had Covid and was recovering from her surgery, citing *Jordan C.* for support. 223 Ariz. 86 (App. 2009) Mother's reliance on *Jordan C.* is unpersuasive. In *Jordan C.*, this court found that the Department could not terminate parental rights based on the 15 months in out-of-home placement grounds when the Department's plan for reunification contributed to and contemplated the length of time the children would remain in care and the parent was in full compliance with the plan. *See* 223 Ariz. at 92–93 ¶¶ 16, 30. Unlike in *Jordan C.*, Mother did not comply with the reunification plan. Moreover, the evidence showed that Mother was either largely mobile and capable of engaging in services and merely failed to engage or rejected the Department's offers to help her get to services.

**¶20** Mother further argues that the juvenile court should not have granted the Department's motion to amend its motion to terminate Mother's rights to include the 15 months in an out-of-home placement because she did not have the opportunity to factually challenge that theory of termination, citing *Carolina H.* for support. 232 Ariz. 569 (App. 2013). Mother's reliance on *Carolina H.* is unpersuasive. In *Carolina H.*, this court vacated a juvenile court's order finding a child dependent based on a reason that the Department never alleged in its petition nor added by amendment. *Id*. at 571 ¶ 9. In doing so, this court rejected the Department's argument that the *juvenile court* could unilaterally deem the petition amended to conform to the evidence. *Id*. at ¶¶ 10–12. Here, the juvenile court did not unilaterally deem the petition amended to conform to the evidence. The

Department, rather, notified the juvenile court and Mother at the beginning of the termination hearings that it intended to amend its original termination petition at the end of its presentation of evidence. The issue and evidence, thus, was always present during the termination hearing and was not a surprise. Mother therefore had full opportunity to challenge that theory during the Department's presentation of evidence and failed to do so. The juvenile court did not abuse its discretion in granting the Department's motion.

¶21    Mother next argues that the juvenile court erred in finding that the Department proved by the preponderance of the evidence that termination served A.N.'s best interests. Termination of parental rights is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). In determining whether the child will benefit from termination, relevant factors to consider include whether the current placement is meeting the child's needs, an adoption plan is in place, and if the child is adoptable. *Demetrius L.*, 239 Ariz. at 3–4 ¶ 12.

¶22    Reasonable evidence supports the juvenile court's finding that termination of Mother's parental rights was in A.N.'s best interests. The Department's case manager testified that A.N. had bonded with maternal grandfather, that maternal grandfather met A.N.'s needs, and that maternal grandfather and his wife were willing to adopt A.N., which would benefit A.N. by providing permanency and stability. The juvenile court, therefore, did not err in terminating Mother's parental rights to A.N. Because we affirm the juvenile court's order under the 15 months in out-of-home placement grounds, we need not review the court's alternative reasoning for termination of Mother's parental rights to A.N.

**CONCLUSION**

¶23    For the reasons stated, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA